*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* AMBROSE, Minors.

UNPUBLISHED
July 18, 2019

No. 346688
Wayne Circuit Court
Family Division
LC No. 18-000076-NA

Before: RONAYNE KRAUSE, P.J., and METER and STEPHENS, JJ.

PER CURIAM.

Respondent-father appeals as of right the trial court's termination of his parental rights to his two sons under MCL 712A.19b(3)(g), (h), (j), and (k)(*ix*). We affirm.

## I. BACKGROUND

Respondent-father is the biological father to two sons, RAA and RDA—born in 2016 and 2017, respectively. Before his incarceration, respondent-father lived with the boys, their mother,[1] and her daughter, MP. MP considered respondent-father to be her step-father as she had known him since she was two years old. Several of MP's minor cousins also stayed with the family at various times.

MP, who was 15 years old at the time of her testimony, testified that she ran away from the family home in October 2017 and disclosed to a friend that respondent-father had sexually touched her on two occasions when she was 13 and 14 years old. MP testified that, on one occasion, respondent-father "called [her] into the back room and he picked [her] up from in between [her] legs." On another occasion, MP was sleeping in the living room when she felt someone moving a finger up and down her thigh "from her knee up towards [her] rear end." When MP woke up, respondent-father was "hovering over" her.

---

[1] The children's mother was also a respondent in these proceedings, but the trial court did not terminate her parental rights to the children and she is not a party to this appeal.

Allegations of inappropriate sexual contact also came from two cousins who frequented the family home. Petitioner sought termination of respondent-father's parental rights in an original petition following respondent-father's no-contest plea to second-degree criminal sexual conduct involving a minor (CSC II) related to respondent-father's conduct with one of MP's cousins. Respondent-father was sentenced to a prison term of 29 months to 40 years for this conviction. This conviction added to respondent-father's lengthy criminal history, with convictions dating back to 2007 for various crimes, including federal convictions for distributing firearms and cocaine. During respondent-father's psychological evaluation, he failed to acknowledge the impact his criminal conduct could have on his children.

The trial court found statutory grounds to terminate respondent-father's parental rights under MCL 712A.19b(3)(g),(h), (j), and (k)(*ix*) based primarily on respondent-father's criminality, imprisonment, and sexual abuse of MP. Following a best-interest hearing, the trial court concluded that respondent-father did not have "the capacity to play a constructive role in the lives of the children," noting again respondent-father's extensive criminal history and pattern of sexually abusing children. Accordingly, the trial court found that termination of respondent-father's parental rights was in both children's best interests. This appeal followed.

## II. ANALYSIS

"In order to terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011). Once a ground for termination is established, the trial court must order termination of parental rights if it finds that termination is in the child's best interests. *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012); MCL 712A.19b(5).

"We review for clear error both the court's decision that a ground for termination has been proven by clear and convincing evidence and, where appropriate, the court's decision regarding the child's best interest." *In re Trejo*, 462 Mich 341, 356-357; 612 NW2d 407 (2000); see also MCR 3.977(K). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re BZ*, 264 Mich App 286, 296-297; 690 NW2d 505 (2004).

Respondent-father first challenges the trial court's statutory-grounds findings. As already noted, the trial court terminated respondent-father's parental rights under MCL 712A.19b(3)(g), (h), (j), and (k)(*ix*). Under subsection (j), the trial court may terminate parental rights if there "is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent." The term "harmed" encompasses physical as well as emotional harm. *In re Hudson*, 294 Mich App 261, 268; 817 NW2d 115 (2011).

The risk respondent-father posed to the children is apparent from the record. Respondent-father has already engaged in inappropriate sexual contact with three children in the family home. Indeed, respondent-father is currently incarcerated for CSC-II involving a minor. This most-recent conviction only adds to respondent-father's lengthy criminal history, including

convictions for assault and trafficking of controlled substances and firearms. Despite several opportunities to reform, respondent-father shows little inclination to break his pattern of criminality. Of particular importance, respondent-father failed to take responsibility for the impact his criminality had on his two children. Accordingly, we agree with the trial court that respondent-father lacks the capacity to provide a suitable home for the children and that the children would be at a risk of emotional or physical harm if returned to respondent's care. Because MCL 712A.19b(3)(j) supported termination of respondent-father's parental rights, we need not address the remaining grounds for termination. *In re Trejo*, 462 Mich at 360.

Next, respondent-father argues that termination was not in either child's best interests. Respondent father argues that the trial court failed to consider his bond with RAA and RDA or their preference for or against termination. According to respondent-father, because he could be released from prison in less than two years, he should have been provided with reunification services to prove that he could parent the children. Respondent-father's assertions of a bond with the children, however, are dubious. Respondent has never met RDA and RAA is too young to remember respondent-father. Indeed, at 19 and 17 months old, RAA and RDA were too young to have an opinion on termination. Moreover, petitioner is not required to provide reunification services when termination is the agency's goal. *In re Moss*, 301 Mich App 76, 91; 836 NW2d 182 (2013).

Respondent-father also argues that the trial court should have considered that he planned for the children's mother to care for the children while he was incarcerated. Yet, the children's mother was also a respondent in these proceedings, given that she failed to provide the children with proper care.[2] More importantly, regardless of who cared for the children during respondent-father's incarceration, the record is clear that the children were at a severe risk of emotional or physical harm if returned to respondent's care. Respondent-father's pattern of criminality and failure to acknowledge the impact his decisions had on his children indicate that respondent-father is unlikely to be able to provide a safe home for the children within any reasonable time. The trial court did not err by finding that termination was in the children's best interests.

Affirmed.

/s/ Amy Ronayne Krause
/s/ Patrick M. Meter
/s/ Cynthia Diane Stephens

---

[2] The trial court declined to terminate respondent-mother's parental rights and ordered petitioner to provide respondent-mother with reunification services.